### Case No. 4,910.

#### FOOTE v. FROST et al.

[3 Ban. & A. 607;[1] 14 O. G. 860.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

Elisha Foote, pro se.

James E. Maynadier, for defendants.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

LOWELL, District Judge. The complainant holds a patent, No. 135,899, for an "improvement in grain-bands, bag-ties," etc. The claim is for a holder substantially as described in the specification, which is a piece of annealed iron wire, bent into the shape shown in the drawings; the upper part is oblong, and makes a loop to which the band or cord is permanently attached; the free end of the cord is then passed round the grain-bag or other thing to be held, and brought between the straight or converging sides of the lower end of the holder, where it is held by the strain, which tends to tighten the wire, but can be at once released by a pull on the free end of the cord.

The patent is dated in 1873, but the evidence is clear and uncontradicted that the invention was made in 1867, or early in 1868. At the time the complainant was commissioner of patents, and the respondent argues that he was prohibited by law from taking out a patent, after his commission had expired, for an invention that he made while he was in office. The words of the statute and its intent alike prove that the prohibition upon the commissioner was not intended to fetter his inventive faculties, or deprive him of the fruits of his skill or ingenuity, but merely to prevent bias and interest in his public capacity; when that ceases, the interdict is removed. The law in 1867 was, that the commissioner should be disqualified and interdicted from acquiring or taking, except by inheritance, during the period for which he should hold his appointment, any right or interest, directly or indirectly, in any patent "which has been," that is, before the date of the statute, "or may hereafter be granted." St. July 4, 1836; 5 Stat. 118. This provision is now found in Rev. St. § 480, somewhat simplified, but with the same meaning, that the commissioner shall not voluntarily acquire any interest in any patent during his term; but, he no more loses his right to take out a patent after he becomes a private citizen, than he forfeits one which he already held before his appointment; and there is no more objection to giving his invention its true date, in his case, than in any other.

The only question of fact which has been made is, whether either of the four patents exhibited by the defendants anticipates the plaintiff's invention. Two of them are dated in 1870, after the time at which, as is now admitted, the plaintiff had completed his discovery. The third, that of Cook, is for a device entirely different in its mode of operation from that of the complainant, and is not

much relied on by the defendants. The fourth is that of Butterfield, No. 57,247, granted in August, 1866, for an improved fastening for shoe-lacings, which the inventor says will hold the lacings of a shoe, corset, or other article, so as to prevent the lacing from working loose in the eyelets. It describes a thin plate of metal, to be inserted in the upper part of the shoe where the lacing ends; it is to be of elliptical or other suitable form, with a slot with converging sides, and an eye through which the lacing may enter, and the patentee says, that, as the lacing is drawn toward the point or angle of the slot, it becomes pinched by the opposite converging sides, so as effectually to hold the lacing. He says in another passage, that the friction of the sides of the slot will suffice to hold the lacing firmly, and prevent it from getting loose. Here is, undoubtedly, a device very closely resembling the plaintiff's holder. The doubt insisted on by the plaintiff in his argument seems to us to have much force. It is that, though the patentee is described as living in Boston, no evidence is produced that his mode of fastening proved to be practicable, as applied to the lacing of a shoe, and that the absence of such evidence, in a place where the trade in shoes is so largely carried on, is noticeable. Upon inspection of Butterfield's specification and drawings, and of a specimen shoe introduced in argument, we are led to doubt whether this mode of fastening would answer the purpose. The strain is quite differently applied in a shoe from what it is in a grain bag, and it is not clear to us that the friction of the sides of the slot would hold the lacing firmly. It may be that the difficulty, if it be a real one, arises from the plate being made of sheet metal instead of wire. If the result is attained by the plate, a mere change of material would be unimportant; but, when the question is: Who first completed a working device?—a change of material by which the result is for the first time obtained is very important.

The point is a narrow one, but on the whole we think it well taken, and that the defendant has failed to prove that Butterfield's invention did, in fact, anticipate the holder of the plaintiff in the sense of the patent law.

Interlocutory decree for the complainant.